**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| TIMOTHY DUGGER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:15-CV-1509-WCB |
| | § | |
| STEPHEN F. AUSTIN STATE | § | |
| UNIVERSITY, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is defendant Stephen F. Austin State University's consolidated motion to dismiss the complaint and motion for summary judgment. Dkt. No. 34. The motion to dismiss is GRANTED IN PART and DENIED IN PART. The motion for summary judgment is DENIED.

## BACKGROUND

The facts, viewed most favorably to the plaintiff, as they must be on the defendant's motions to dismiss and for summary judgment, are as follows:

Plaintiff Timothy Dugger was employed as a police officer for the defendant Stephen F. Austin State University ("SFA"), an agency of the State of Texas. In August 2014, he was assigned to the University Police Department's Parking and Traffic Office. On August 23, 2014, a Saturday, Mr. Dugger fell while at work and injured his back. He reported his injury to his supervisor Clayton Harrington, who told Dugger that he needed to be seen by SFA's Environmental Health, Safety, and Risk Management Department ("the Health and Safety Office") to report his injury and "fill out the necessary paperwork." Dkt. No. 38-1, Plaintiff's

Exh. 1, at 2. Because it was a Saturday, the Health and Safety Office was closed, so Dugger waited until the office opened on Monday, August 25, to report his injury.

On August 25, Mr. Dugger went to the Health and Safety Office where he filled out a report of the incident. The medical staff at the Health and Safety Office evaluated Mr. Dugger at that time and referred him to a local physician for further evaluation and treatment. Dkt. No. 38-1, at 4, Plaintiff's Exh. 1, at 2. After Mr. Dugger had completed the paperwork regarding the incident, the Health and Safety Office forwarded his report of injury to the State Office of Risk Management ("SORM"), the State's workers' compensation insurance carrier, which initiated the process of filing for workers' compensation benefits for Mr. Dugger's injury. See Dkt. No. 34-2, Defendant's Exh. B.

Mr. Dugger sought medical treatment from Dr. David Duane Smyers, the physician to whom he had been referred. Dr. Smyers examined Mr. Dugger and cleared him to return to work with restrictions. Dr. Smyers's restrictions directed that Mr. Dugger was not to engage in prolonged standing, kneeling/squatting, bending/stooping, pushing/pulling, twisting or climbing, and further directed that he was to be limited to a maximum of two hours of walking per day. Dkt. No. 34-3, Defendant's Exh. C. Dr. Smyers determined that he could not diagnose the extent of Mr. Dugger's injuries without an MRI examination, but in the meantime he recommended a course of physical therapy.

The Assistant Chief of Police for the University Police Department reviewed Dr. Smyers's restrictions and arranged for a light-duty assignment for Mr. Dugger consistent with those restrictions. Dkt. No. 34-4, Defendant's Exh. D. The light-duty assignment was memorialized in an "Offer of Employment" dated August 29, 2014, and signed by SFA's police chief, Marc Cossich. The "Offer of Employment" noted that SFA's Workers' Compensation

Division was "in receipt of medical information from your treating physician . . . outlining the restrictions under which you are able to return to work." It added that "[t]he University Police Department will abide by the physical limitations as outlined by your physician." The Offer further provided, as to the expected duration of the light-duty assignment, that it was "contingent on the need for additional help working the front counter during the peak time of the beginning of the Semester. Once the need has passed, then the Light Duty Assignment will end." Dkt. No. 34-5, Defendant's Exh. E.

Mr. Dugger accepted the light-duty assignment on September 2, 2014. However, the assignment ended on September 4 because, according to Mr. Dugger's supervisor, the peak workload period for the Parking and Traffic Office at the outset of the semester had ended. At that point, the University Police Department advised Mr. Dugger that it could no longer accommodate his restrictions by providing him with light-duty work and that he would not be allowed to return to work until his physicians gave him a full-duty release.

Dr. Smyers submitted supplemental reports to SFA on September 4, September 18, and September 29 in which he continued to advise that Mr. Dugger could return to work, but subject to the restrictions previously imposed. See Dkt. No. 34-8, at 2-4, Defendant's Exh. H.

After Mr. Dugger completed a course of physical therapy with no resulting improvement in his condition, SORM approved an MRI examination, and in October 2014 Mr. Dugger underwent an MRI. The results of the examination showed "left L4-5 foraminal stenosis secondary to a posterior lateral disc herniation and annular tear and facet degenerative changes and facet degenerative changes also noted at L3-4 and L5-S1." Dkt. No. 38-1, at 11, Plaintiff's Exh. 2. Mr. Dugger had another medical assessment on October 13, 2014, which resulted in a diagnosis of herniated lumbar nucleus pulposus. The report of that examination continued to

state that Mr. Dugger could return to work, but subject to the previously imposed restrictions. Dkt. No. 34-8, at 7, Defendant's Exh. H.

Another physician, Dr. James Michaels, examined Mr. Dugger on December 2, 2014. Dr. Michaels noted that Mr. Dugger was complaining of numbness in his leg and pain radiating down his left leg. Dr. Michaels concluded that the MRI showed a "left paracentral bulge with the exiting L4 nerve being abutted by the disc." His assessment was the possibility of right sacroilitis with myofascial pain. Dr. Michaels did not think surgical intervention was necessary at that time, however. Dkt. No. 38-1, at 9, Plaintiff's Exh. 2.

Mr. Dugger was then evaluated by Dr. Michael Grandison on December 15, 2014. Dkt. No. 34-8, at 8, Defendant's Exh. H; Dkt. No. 38-1, at 11, Plaintiff's Exh. 2. Like the previous physicians who had treated Mr. Dugger, Dr. Grandison released Mr. Dugger to work, but subject to activity restrictions, including not walking more than two hours per day. Dkt. No. 34-8, at 8, Defendant's Exh. H; Dkt. No. 38-1, at 11, Plaintiff's Exh. 2.

In December 2014, Mr. Dugger arranged to be examined by Dr. Kenneth Fults, a specialist in interventional pain management. On December 22, 2014, Dr. Fults directed that Mr. Dugger was to remain off work until his next appointment, on January 7, 2015. Dkt. No. 34-7, Defendant's Exh. G. Following that appointment, Dr. Fults assessed Mr. Dugger with "lumbar disc protrusion with radiculitis," and "thoracic and lumbar strain/sprain." Dkt. No. 34-8, at 9, Defendant's Exh. H. On Dr. Fults's recommendation, SORM approved an epidural steroid injection, which was administered on January 27, 2015, to the L4-L5 region of Mr. Dugger's spine. Dkt. No. 38-1, at 12, Plaintiff's Exh. 2. The injection produced no change in Mr. Dugger's symptoms. Id.

On March 10, 2015, Mr. Dugger filed a charge of discrimination with the Texas Workers' Compensation Commission. He claimed that he had been discriminated against in violation of chapter 21 of the Texas Labor Code and the Americans with Disabilities Act ("ADA") by being denied a reasonable accommodation due to his disability. Dkt. No. 34-12, Defendant's Exh. L.

Over the next several months, Mr. Dugger continued to see Dr. Fults, who continued to report to SFA that Mr. Dugger's injury prevented him from returning to work, even with restrictions. Dkt. No. 34-8, at 10, Defendant's Exh. H. During that period, Mr. Dugger reported to Dr. Fults that his pain levels were worsening.

In May 2015, Mr. Dugger saw another physician, Dr. Renato Bosita of the Texas Back Institute. Dr. Bosita asked that SORM approve a new MRI examination, which was ultimately done. Based on the results of that MRI, Dr. Bosita diagnosed Mr. Dugger as having "mild disc desiccation at several levels in the lumbar spine without significant loss of disc height, multilevel degenerative facet hypertrophy, annular tear along the left posterior lateral L4-5 disc margin with 2-3 mm broad-based disc protrusion. The disc may contact the left nerve root lateral to the foramen at that level." Dkt. No. 38-1, at 12, Plaintiff's Exh. 2. Dr. Bosita recommended that Mr. Dugger have surgery. SORM, however, ultimately declined to approve the request for surgery.

On September 10, 2015, Mr. Dugger filed this action, alleging that he had a disability and had been discriminated against in violation of various statutes. Dkt. No. 1. Two months later, he filed an amended complaint in which he narrowed his federal claims to asserting that he had been discriminated against because of his disability, in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. He identified the alleged discriminatory acts as including, but not

limited to: (1) refusing to allow him to return to employment on September 4, 2014; (2) discriminating against him in the terms, conditions, and privileges of employment; (3) retaliating against him; and (4) refusing to accommodate his disability. Mr. Dugger also alleged that SFA had violated section 451.001 of the Texas Labor Code by discriminating against him for filing a workers' compensation claim for his injury. Mr. Dugger invoked this Court's federal question jurisdiction, 28 U.S.C. § 1331, for his Rehabilitation Act claim, and the Court's supplemental jurisdiction, 28 U.S.C. § 1367, for his Texas Labor Code claim. Dkt. No. 4.

On April 15, 2016, after Mr. Dugger had exhausted all of his accumulated leave and had been on leave without pay for a period of time, SFA terminated his employment. Subsequently, on August 22, 2016, a benefit review conference was conducted by the Division of Workers' Compensation of the Texas Department of Insurance. That hearing resulted in a decision that Mr. Dugger's compensable injury of August 23, 2014, extended to "an L4-5 disc herniation and annular tear, lumbar intervertebral disc derangement, as it relates to the L4-5 disc herniation, and lumbar radiculopathy." Dkt. No. 38-1, at 17-22, Plaintiff's Exh. 4. The insurance carrier was ordered to pay benefits to Mr. Dugger in accordance with that decision. Id.

## DISCUSSION

### I. The Motion to Dismiss

SFA first asserts that the Eleventh Amendment to the U.S. Constitution bars both of Mr. Dugger's claims—his Rehabilitation Act claim and his Texas Labor Code claim. SFA is correct as to the Texas Labor Code claim but wrong as to the Rehabilitation Act claim.

### A. The Rehabilitation Act Claim

Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability in the United States as defined in section 705(20) of this title shall, solely by reason

of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The statute defines a "program or activity" to include "all the operations of . . . a college, university, or other postsecondary institution, or a public system of higher education." Id. § 794(b)(2)(A).

The operations of SFA plainly qualify as a "program or activity" within the meaning of section 504 of the Rehabilitation Act. It is also undisputed that SFA is a state agency that receives federal funding. And Mr. Dugger contends that he is an "otherwise qualified individual," i.e., that he is qualified to do his job as an officer in the SFA University Police Department if he is given an accommodation for his disability—a long-term back injury. He argues that he has been subjected to discrimination by SFA by being barred from employment because of his disability. SFA responds that this Court lacks jurisdiction to adjudicate Mr. Dugger's Rehabilitation Act claim because States (and state agencies, such as SFA) enjoy immunity under the Eleventh Amendment from suit in a federal court under section 504 of the Rehabilitation Act.[1]

### 1. Abrogation of Eleventh Amendment Immunity

The Eleventh Amendment bars an individual from suing a State in federal court unless the State consents to suit or Congress has clearly and validly abrogated the State's right not to be so sued. See College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666,

---

[1] As an agency of the State of Texas, SFA enjoys the same sovereign immunity as the State itself. See Lowe v. Tex. Tech Univ., 540 S.W.2d 297, 298 (Tex. 1976); Perry v. Tex. A & I Univ., 737 S.W.2d 106, 108 (Tex. App. 1987) ("Branches of the University of Texas and other state universities are agencies of the State and thus are entitled to the same governmental immunity from suit or liability as the State of Texas."); see also Fite v. Univ. of Tex. M.D. Anderson Cancer Ctr., Civil Action No. 12-cv-3739, 2013 WL 3338587, at * 2 (S.D. Tex. July 2, 2013).

670 (1999). Abrogation of the State's Eleventh Amendment immunity requires (1) that Congress has unequivocally expressed its intent to abrogate the State's immunity from suit on a particular cause of action in federal court; and (2) that in so doing Congress has acted pursuant a valid grant of constitutional authority other than its powers enumerated in Article I—in particular, Congress's enforcement power under section 5 of the Fourteenth Amendment.

When section 5 of the Fourteenth Amendment serves as the basis for the claim that a particular statute abrogates the States' Eleventh Amendment immunity, the rights and remedies created by the statute in question must be congruent with and proportional to the Fourteenth Amendment right the statute purports to enforce and the record of Fourteenth Amendment violations the statute is designed to remedy. See Coleman v. Court of Appeals of Md., 132 S. Ct. 1327, 1334-37 (2012); Bd. of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2000); City of Boerne v. Flores, 521 U.S. 507, 520 (1997) ("There must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end. Lacking such a connection, legislation may become substantive in operation and effect. History and our case law support drawing the distinction, one apparent from the text of the [Fourteenth] Amendment.").

In 1985, the Supreme Court held that Congress did not abrogate the Eleventh Amendment protection of the States from suit in federal court under section 504 of the Rehabilitation Act. See Atascadero State Hosp. v. Scanlon, 473 U.S. 234 (1985) (holding that, in enacting section 504 of the Rehabilitation Act, Congress did not clearly indicate a purpose to overturn the States' Eleventh Amendment immunity from suit in federal court). In response to the Atascadero decision, Congress enacted the Rehabilitation Act Amendments of 1986, 100 Stat. 1845. Section 1003 of that statute provided as follows:

(1) A State shall not be immune under the Eleventh Amendment . . . from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

(2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

42 U.S.C. § 2000d-7(a).

As to the question of congressional intent, Congress could not have been clearer. The 1986 amendment made perfectly plain that Congress intended to abrogate the States' Eleventh Amendment protection against suit in federal court under the Rehabilitation Act. As to whether that measure was a valid exercise of Congress's constitutional power under section 5 of the Fourteenth Amendment, however, the law has been unsettled.

In Coolbaugh v. Louisiana, 136 F.3d 430 (5th Cir. 1998), the Fifth Circuit ruled that both title I of the ADA, 42 U.S.C. § 12112 (which covers discrimination in employment) and title II of the ADA, 42 U.S.C. § 12132 (which was modeled on section 504 of the Rehabilitation Act and covers discrimination in access to public services, programs, or activities) validly abrogated state sovereign immunity pursuant to section 5 of the Fourteenth Amendment. Other circuits agreed. See, e.g., Martin v. Kansas, 190 F.3d 1120 (10th Cir. 1999); Muller v. Costello, 187 F.3d 298 (2d Cir. 1999); Clark v. California, 123 F.3d 1267 (9th Cir. 1997).[2]

---

[2]  Most of the cases involving disability discrimination arise under the ADA rather than the Rehabilitation Act. However, the legal principles applicable to the ADA are generally imported into cases involving section 504 of the Rehabilitation Act. See Pace v. Bogalusa City Sch. Bd., 403 F.3d at 287-88 & n.76 and cases cited therein ("[B]ecause the rights and remedies under both statutes are the same, case law interpreting one statute can be applied to the other."); see also Frame v. City of Arlington, 657 F.3d 215, 223 (5th Cir. 2011) (en banc) ("The ADA and

Those decisions, however, were called into question by the Supreme Court's decision in Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356 (2001), which held that title I of the ADA did not abrogate the States' immunity under the Eleventh Amendment. The Garrett Court held that although Congress could use its authority under section 5 of the Fourteenth Amendment to abrogate States' Eleventh Amendment immunity, it could do so only if the statute at issue either remedied or deterred violations of the Fourteenth Amendment; it could not do so by fashioning new rights and remedies untethered to substantive Fourteenth Amendment rights. Garrett, 531 U.S. at 365.

Like this case, Garrett involved a claim of employment discrimination based on disability. The Court began its discussion of the abrogation issue by analyzing whether States are required by the Fourteenth Amendment to make special accommodations for the disabled. The Court concluded that the Fourteenth Amendment imposed no such requirement, "so long as their actions toward such individuals are rational." 531 U.S. at 367. The Court then explained that it is not irrational for a State "to hold to job-qualification requirements which do not make allowance for the disabled." Id. at 368. Thus, "[i]f special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause." Id.

---

the Rehabilitation Act generally are interpreted *in pari materia.*"); Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000); Cummings v. Norton, 393 F.3d 1186, 1190 n.2 (10th Cir. 2005) ("Because the language of disability used in the ADA mirrors that in the Rehabilitation Act, we look to cases construing the Rehabilitation Act for guidance when faced with an ADA challenge, and vice versa.") (quotations and citations omitted); Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995) ("[W]here suit is filed against a federally-funded entity under the Rehabilitation Act or against a private employer under the ADA, the substantive standards for determining liability are the same."). That is particularly true with respect to issues such as the definition of "qualified individual with a disability," in that both statutes look to the same provision for the definition of that term, 42 U.S.C. § 12102 (incorporated into section 504 of the Rehabilitation Act by 29 U.S.C. § 705(20)(B)). See Kemp v. Holder, 610 F.3d 231, 234-35 (5th Cir. 2010).

Having decided that the Fourteenth Amendment does not require special accommodations for the disabled, the Court went on to "examine whether Congress identified a history and pattern of unconstitutional employment discrimination by the States against the disabled." 531 U.S. at 368. Noting that "Congress's § 5 authority is appropriately exercised only in response to state transgressions," the Court found that the legislative record of the ADA "simply fails to show that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled." Id.

Even if there were some evidence of a pattern of unconstitutional discrimination by the States, the Garrett Court noted, "the rights and remedies created by the ADA against the States would raise the same sort of concerns as to congruence and proportionality as were found in City of Boerne." 531 U.S. at 372. The accommodation duty in the ADA "far exceeds what is constitutionally required in that it makes unlawful a range of alternative responses that would be reasonable but would fall short of imposing an 'undue burden' upon the employer." Id. Because the Court found that Congress had not identified a history and pattern of unconstitutional employment discrimination by the States when it enacted title I of the ADA, the Court held that the remedy imposed by Congress for employment discrimination based on disability was not "congruent and proportional" to a targeted constitutional violation, and that the statute therefore could not constitutionally abrogate the States' Eleventh Amendment immunity. Id. at 374.

Following Garrett, the Fifth Circuit held that Coolbaugh was no longer good law, and it ruled that title II of the ADA and section 504 of the Rehabilitation Act did not abrogate the States' Eleventh Amendment immunity. Reickenbacker v. Foster, 274 F.3d 974, 981-83 (5th Cir. 2001). The court in Reickenbacker found that the legislative history of the ADA did not establish that the States had engaged in unconstitutional discrimination against the disabled, id.

at 982, and it noted that the statute imposed "an affirmative accommodation obligation on the part of public entities that far exceeds the constitutional boundaries," id. at 983. For that reason, the court concluded that title II of the ADA and section 504 of the Rehabilitation Act are not "proportional and congruent to the legislative findings of unconstitutional discrimination against the disabled by the States," and that those statutes therefore did not abrogate the States' Eleventh Amendment immunity. Id. Other courts interpreted the Supreme Court's decisions in the same manner. See, e.g., Alsbrook v. City of Maumelle, 184 F.3d 999, 1004-10 (8th Cir. 1999) (en banc); Thompson v. Colorado, 278 F.3d 1020, 1027-34 (10th Cir. 2001), overruled in Guttman v. Khalsa, 446 F.3d 1027 (10th Cir. 2006); Brown v. N.C. Div. of Motor Vehicles, 166 F.3d 698, 706 (4th Cir. 1999).

After the Fifth Circuit's decision in Reickenbacker, the Supreme Court decided two more cases that seemed to point to a more case-specific resolution of the abrogation issue. In Tennessee v. Lane, 541 U.S. 509 (2004), the Court held that title II of the ADA abrogates States' Eleventh Amendment immunity, at least for cases involving restrictions on the right of access to courts. And in United States v. Georgia, 546 U.S. 151 (2006), the Court held that title II of the ADA abrogates States' Eleventh Amendment immunity at least for conduct that actually violates the Fourteenth Amendment.

In the wake of those decisions, courts of appeals that have addressed the abrogation issue have attempted to determine whether the conduct at issue in the case violated the Fourteenth Amendment, and if not whether Congress's purported abrogation of sovereign immunity as to that particular class of conduct is nonetheless valid. See Mingus v. Butler, 591 F.3d 474, 481-83 (6th Cir. 2010); Brewer v. Wis. Bd. of Bar Examiners, 270 F. App'x 418, 421 (7th Cir. 2008); Klinger v. Director, Dep't of Revenue, State of Mo., 455 F.3d 888 (8th Cir. 2006); Guttman v.

Khalsa, 446 F.3d 1027, 1034-36 (10th Cir. 2006).  In particular, several circuits, relying on Tennessee v. Lane, have held that title II of the ADA validly abrogated the States' Eleventh Amendment immunity in actions against federal grantees with respect to access to public education.  See Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 550-56 (3d Cir. 2007); Toledo v. Sanchez, 454 F.3d 24, 40 (1st Cir. 2006); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 488-89 (4th Cir. 2005); Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ., 405 F.3d 954, 959 (11th Cir. 2005).

While some courts have departed from decisions reached prior to Lane and United States v. Georgia, the Fifth Circuit has not reconsidered its decision in Reickenbacker.  See Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 454 (5th Cir. 2005) ("We have yet to decide whether the principle of Lane extends to cases involving other rights or, alternatively, whether our holding in Reickenbacker continues to control in such cases.").  In the absence of a squarely contrary ruling by the Supreme Court, the Reickenbacker decision governs this Court's consideration of the abrogation issue in this case.  The Court is therefore bound by the Fifth Circuit's holding that section 504 of the Rehabilitation Act does not abrogate the State's (or SFA's) immunity under the Eleventh Amendment.

Even if this Court were free to ignore the Fifth Circuit's decision in Reickenbacker, the Court would still find this case closer to the Supreme Court's decision in Garrett than to its decisions in Lane or United States v. Georgia.  Lane involved a specific right that is entitled to constitutional protection—the right of access to courts.  The Court pointedly limited the scope of its decision in that case to that fundamental right.  541 U.S. at 532, 533 n.20.  And United States v. Georgia involved allegations of specific violations of the Fourteenth Amendment.  By contrast, this case, like Garrett, involves a claim of disability discrimination in employment, for

which the Fourteenth Amendment itself provides no protection unless the State's conduct is lacking in a rational basis. See Garrett, 531 U.S. at 366-67.

Dugger's claim of disability discrimination in employment is parallel to the claim at issue in Garrett. In fact, the Rehabilitation Act specifically provides that the "standards used to determine whether [section 504 of the Rehabilitation Act] has been violated in a complaint alleging employment discrimination under [section 504] shall be the standards applied under title I of the Americans with Disabilities Act of 1990." 29 U.S.C. § 794(d). For the same reasons that the Court in Garrett found that title I of the ADA did not abrogate the State's Eleventh Amendment immunity in that case, this Court holds that section 504 of the Rehabilitation Act does not abrogate SFA's Eleventh Amendment immunity against being sued in federal court on a claim of disability discrimination in employment.[3]

---

[3] In Hale v. King, 642 F.3d 492, 498 (5th Cir. 2011), the Fifth Circuit noted (without deciding) the question whether the Supreme Court's decision in United States v. Georgia requires a court to determine if a claimant's allegations actually state a claim under title II of the ADA before addressing whether title II has abrogated the State's Eleventh Amendment immunity. In several non-precedential opinions, the Fifth Circuit has employed that approach, requiring district courts to decide (1) whether the alleged conduct violated the ADA; (2) to what extent that conduct also violated the Fourteenth Amendment; and (3) if the conduct violated the ADA but not the Fourteenth Amendment, whether Congress's abrogation of the State's Eleventh Amendment immunity is valid for that alleged conduct. See Duncan v. Univ. of Tex. Health Sci. Ctr. at Houston, 469 F. App'x 364, 367 (5th Cir. 2012); Wells v. Thaler, 460 F. App'x 303, 311 (5th Cir. 2012); Brockman v. Tex. Dep't of Criminal Justice, 397 F. App'x 18, 23 (2010). Even assuming that approach should be applied in the context of employment discrimination, the result here would be the same. That is true for two reasons. First, Garrett makes clear that employment discrimination of the sort alleged in this case does not violate the Fourteenth Amendment. Second, in addressing SFA's summary judgment motion in Part II of this opinion, the Court concludes that Mr. Dugger's complaint has adduced sufficient facts in support of his Rehabilitation Act claim to withstand summary judgment. That requires the Court to decide whether Congress's effort in section 504 to abrogate the States' Eleventh Amendment immunity in employment discrimination cases was valid in light of the principles of congruence and proportionality. For the reasons discussed by the Supreme Court in Garrett, this Court holds that it was not.

14

In addition to alleging that he was discriminated against in violation of the Rehabilitation Act when SFA refused to allow him to return to work as of September 5, 2014, with an accommodation for his disability, Mr. Dugger alleges in his complaint that SFA discriminated against him "[b]y retaliating against Dugger in violation of the [Rehabilitation] Act." Plaintiff's First Amended Complaint, Dkt. No. 9, at 3.

Section 504 of the Rehabilitation Act does not expressly refer to retaliation in the context of employment discrimination, but the courts have held that section 504 encompasses a prohibition against retaliation. In so doing, the courts have looked to 29 U.S.C. § 794(d), which provides that the standards for finding employment discrimination under section 504 are the same as those under title I of the ADA, which contains a specific prohibition against retaliation. See 42 U.S.C. § 12203(a). See Cohen v. Univ. of Tex. Health Sci. Ctr., 447 F. App'x 273, 277 (5th Cir. 2014); Shannon v. Henderson, 275 F.3d 42, No. 01-10346, 2001 WL 1223633, at *3 (5th Cir. 2001); Calderon v. Potter, 113 F. App'x 586, 592 & n.1 (5th Cir. 2004); S.B. ex. rel. A.L. v. Bd. of Educ. of Harford Cty., 819 F.3d 69, 78 n.6 (4th Cir. 2016); Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ., 595 F.3d 1126, 1133 (10th Cir. 2010); Mershon v. St. Louis Univ., 442 F.3d 1069, 1077 n.3 (8th Cir. 2005).

In addition, courts have looked to the implementing regulations promulgated under section 504 in holding that the Rehabilitation Act includes a remedy against retaliation. The pertinent Department of Justice regulation states that a recipient of federal financial assistance may not "intimidate or retaliate against any individual . . . for the purpose of interfering with any right secured" by section 504. 28 C.F.R. § 42.503(b)(1)(vii); see D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 40 (1st Cir. 2012); Child v. San Bernardino Unified Sch. Dist., 35 F. App'x 521, 523 (9th Cir. 2002); Singletary ex. rel. N.M.M. v. Cumberland Cty. Schs., No. 5:12-

cv-744, 2013 WL 4674874, at *9 (E.D.N.C. Aug. 30, 2013); <u>Wiles v. Dep't of Educ.</u>, 555 F. Supp. 2d 1143, 1153 (D. Haw. 2008); <u>Smith ex rel. C.R.S. v. Tangipahoa Parish Sch. Bd.</u>, Civil Action No. 05-6648, 2006 WL 3395938, at *13 (E.D. La. Nov. 22, 2006); <u>M.T.V. v. Perdue</u>, No. Civ. A. 1:03-cv-468, 2004 WL 3826047, at *7 (N.D. Ga. Feb. 3, 2004).

Under both the Rehabilitation Act and the ADA, the courts have held that in order to establish unlawful retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity; (2) the employer took an adverse action against him; and (3) there was a causal connection between the adverse action and the protected activity. <u>Jenkins v. Cleco Power, LLC</u>, 487 F.3d 309, 317 n.3 (5th Cir. 2007); <u>Sherrod v. Am. Airlines, Inc.</u>, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998); <u>Palmquist v. Shinseki</u>, 689 F.3d 66, 70 (1st Cir. 2012); <u>Jarvis v. Potter</u>, 500 F.3d 1113, 1125 (10th Cir. 2007); <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 272 (4th Cir. 2001); <u>Amir v. St. Louis Univ.</u>, 184 F.3d 1017, 1025 (8th Cir. 1999); <u>Sands v. Runyon</u>, 28 F.3d 1323, 1331 (2d Cir. 1994).

Mr. Dugger's complaint does not specify what acts triggered the alleged retaliatory conduct, nor is it clear from the factual allegations of the complaint what those acts were.[4] There are two likely candidates for the allegedly triggering conduct: Mr. Dugger's filing of a workers' compensation claim for his injury, and Mr. Dugger's request for an accommodation, in the form of a light-duty assignment, for his disability. Both candidates have fatal defects.

Mr. Dugger may be intending to claim that the triggering act was his request for workers' compensation benefits for his injury, since that is the basis for his claim of a violation of section 451.001 of the Texas Labor Code. If that is so, however, his claim fails because an allegation of

---

[4] The complaint is entirely conclusory in this regard. For that reason, the retaliation allegation may be insufficient to satisfy the requirements of Fed. R. Civ. P. 8. The defendant did not seek dismissal on that ground, however, so the Court will not address that issue.

retaliation for filing a workers' compensation claim does not fall within the scope of the disability discrimination laws, including the Rehabilitation Act.  See Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 154 (4th Cir. 2012) ("Filing a workers' compensation claim is not something that is covered by the ADA."); Lanza v. Postmaster Gen. of the U.S., 570 F. App'x 236, 241 (3d Cir. 2014) ("filing a claim for workers' compensation does not constitute protected activity under . . . the Rehabilitation Act"); Boyd v. Broome Community College, No. 3:14-cv-397, 2015 WL 6962498, at *11 (N.D.N.Y. Nov. 10, 2015) (same); Kendall v. Postmaster Gen. of the U.S., 543 F. App'x 141, 145 (3d Cir. 2013) (same); see also Bennett v. Project Renewal, Inc., 627 F. App'x 29, 31 (2d Cir. 2015) (same for the ADA and title VII of the Civil Rights Act of 1964); Davis v. Team Elec. Co., 520 F.3d 1080, 1093 n.8 (9th Cir. 2008) (same for title VII); Jimenez v. Potter, 211 F. App'x 289, 290 (5th Cir. 2006) (same for title VII); Leavitt v. S W & B Constr. Co., 766 F. Supp. 2d 263, 286 (D. Me. 2011) (same for the ADA and title VII); Edwards v. Creoks Mental Health Servs., Inc., 505 F. Supp. 2d 1080, 1093 (N.D. Okla. 2007) (same for the ADA and Title VII).

If Mr. Dugger's retaliation claim is based on his request for an accommodation, then that claim is barred by the Eleventh Amendment for the same reasons that bar his claim that he was discriminated against by being denied the accommodation he requested.  Courts have uniformly held that retaliation claims premised on employment discrimination under title I of the ADA are subject to the Eleventh Amendment.  See Levy v. Kan. Dep't of Soc. & Rehab. Servs., 789 F.3d 1164, 1169 (10th Cir. 2015); Demshki v. Monteith, 255 F.3d 986, 988-89 (9th Cir. 2001); Cook v. Springfield Hosp. Ctr., Civil Action No. ELH-16-2024, 2016 WL 6124676, at *7 (D. Md. Oct. 19, 2016); Emery v. Mich. Dep't of Civil Rights, Case No. 15-11467, 2016 WL 1090429, at *2 (E.D. Mich. Mar. 21, 2016); Watson v. Ohio Dep't of Rehab. & Correction, 167 F. Supp. 3d 912,

921-22 (S.D. Ohio 2016); Lucas v. State of Ala. Dep't of Pub. Health, Civil Action No. 3:15-cv-941, 2016 WL 225547, at *3-4 (M.D. Ala. Jan. 7, 2016); Rich v. New Jersey, Civil Action No. 14-2075, 2015 WL 2226029, at *8 (D.N.J. May 12, 2015); Dottin v. Tex. Dep't of Criminal Justice, No. 1:13-cv-710, 2014 WL 11498078, at *10 (E.D. Tex. Nov. 25, 2014) (citing numerous cases); Quadir v. N.Y. State Dep't of Labor, 39 F. Supp. 3d 528, 536-37 (S.D.N.Y. 2014) (citing numerous cases); Umholtz v. Kan., Dep't of Soc. & Rehab. Servs., 926 F. Supp. 2d 1222, 1227-28 (D. Kan. 2013) (citing numerous cases); Padilla v. N.Y. State Dep't of Labor, No. 99 Civ. 5291, 2010 WL 3835182, at *4-5 (S.D.N.Y. Sept. 13, 2010); Chiesa v. N.Y. State Dep't of Labor, 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009).

Based on Tennessee v. Lane and United States v. Georgia, some courts have held that no such absolute bar applies to retaliation claims premised on violations of title II of the ADA. See Blysma v. Haw. Pub. Hous. Auth., 951 F. Supp. 2d 1116, 1120-21 (D. Haw. 2013); DeCotiis v. Whittemore, 842 F. Supp. 2d 354, 370-71 (D. Me. 2012); McCollum v. Owensboro Cmty. & Tech. Coll., No. 4:09-121, 2010 WL 5393852, at *3 (W.D. Ky. Dec. 22, 2010); Demby v. Md. Dep't of Health & Mental Hygiene, No. 06-1816, 2009 WL 415265, at *1 (D. Md. Feb. 13, 2009); Sarkissian v. W. Va. Univ. Bd. of Governors, No. 1:05-cv-144, 2007 WL 1308978, at *8 (N.D.W. Va. May 3, 2007). Those cases, however, do not extend to claims of employment discrimination, which arise under title I of the ADA.

Because this case involves a claim of employment discrimination, the title I cases are the more analogous cases. As noted, the same standards apply to employment discrimination cases under the Rehabilitation Act as to cases arising under title I of the ADA. See 29 U.S.C. § 794(d) and cases cited at note 2, supra. Based on the consistent line of cases finding that retaliation claims predicated on title I of the ADA are subject to the Eleventh Amendment, the Court holds

that section 504 of the Rehabilitation Act does not abrogate SFA's Eleventh Amendment immunity against being sued in federal court on a claim of disability discrimination in employment even if Mr. Dugger's theory is that he was retaliated against for having requested an accommodation.

### 2. Waiver of Eleventh Amendment Immunity

Even in the absence of valid congressional abrogation of a State's Eleventh Amendment immunity from suit in federal court, the State may waive its Eleventh Amendment rights with respect to particular causes of action. In order to find such a waiver, however, the State's consent to suit must be "unequivocally expressed." Sossamon v. Texas, 131 S. Ct. 1651, 1658 (2011); College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 680 (1999). When such a waiver is found, suits against the States in federal court on that cause of action are permitted.

The Supreme Court in Atascadero held that the State of California had not validly waived its Eleventh Amendment right not to be sued in federal court on an action arising under section 504 of the Rehabilitation Act. However, the enactment of the Rehabilitation Act Amendments of 1986, which has been characterized as "an unambiguous waiver of the States' Eleventh Amendment immunity," Lane v. Peña, 518 U.S.187, 200 (1996), made clear that a state activity that accepted federal funding would be deemed to have consented to suit on the identified causes of action in federal court.

In light of the 1986 statute, the Fifth Circuit has held that Congress permissibly conditioned a state agency's receipt of funds on an unambiguous waiver of the Eleventh Amendment immunity, and that by accepting such funding, the State has consented to Rehabilitation Act claims being brought against the agency in federal court. See Pace v.

Bogalusa City Sch. Bd., 403 F.3d 272, 277-87 (5th Cir. 2005) (en banc); Miller v. Tex. Tech Univ. Health Sci. Ctr., 421 F.3d 342, 347-52 (5th Cir. 2005) (en banc); Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 453-54 (5th Cir. 2005); Thomas v. Univ. of Houston, 155 F. App'x 115 (5th Cir. 2005); see also Pederson v. La. State Univ., 213 F.3d 858, 875-76 (5th Cir. 2000) (same analysis as applied to title IX of the Education Amendments of 1972).[5]  It is thus clear that the State of Texas has waived the Eleventh Amendment immunity that otherwise would have been available to SFA as an agency of the State of Texas with respect to actions brought under section 504 of the Rehabilitation Act.

In addition to creating the predicate for a waiver of the State's Eleventh Amendment immunity, the 1986 Rehabilitation Act Amendments made clear that all remedies that would be available to a private or other public entity are available in actions against the States.  In accordance with that statutory directive, the courts have held that private parties can obtain compensatory damages against private and public entities (other than the federal government) in actions brought under section 504 of the Rehabilitation Act.  However, the courts have also held that monetary relief against public entities is available only for intentional discrimination.  D.A.

_____

[5]  Other circuits have ruled similarly on the waiver issue.  See, e.g., Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 490-96 (4th Cir. 2005); Barbour v. Wash. Metro. Area Transit Auth., 374 F.3d 1161, 1163-68 (D.C. Cir. 2004); Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 127-30 (1st Cir. 2003); Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees, 344 F.3d 1288, 1290-93 (11th Cir. 2003); A.W. v. Jersey City Pub. Schs., 341 F.3d 234, 239-44 (3d Cir. 2003); Miranda B. v. Kitzhaber, 328 F.3d 1181, 1185-86 (9th Cir. 2003); Koslow v. Commonwealth of Pa., 302 F.3d 161, 169-72 (3d Cir. 2002); Robinson v. Kansas, 295 F.3d 1183, 1189-90 (10th Cir. 2002); Douglas v. Cal. Dep't of Youth Auth., 271 F.3d 812, 820-21 (9th Cir. 2001); Nihiser v. Ohio Envtl. Prot. Agency, 269 F.3d 626, 628 (6th Cir. 2001); Jim C. v. United States, 235 F.3d 1079, 1081-82 (8th Cir. 2000) (en banc); Stanley v. Litscher, 213 F.3d 340, 344 (7th Cir. 2000); but see Garcia v. S.U.N.Y. Health Sci. Ctr., 280 F.3d 98, 113-16 (2d Cir. 2001) (holding that New York State did not waive its sovereign immunity against suit under section 504 of the Rehabilitation Act because the State was not shown to have made an "intentional relinquishment or abandonment of a known right or privilege" when it accepted federal funds for the State University of New York).

ex rel. Latasha A. v. Houston Indep. Sch. Dist., 629 F.3d 450, 454 (5th Cir. 2010); Delano-Pyle v. Victoria Cty. Tex., 302 F.3d 567, 575 (5th Cir. 2002); Carter v. Orleans Parish Pub. Schs., 725 F.3d 261, 264 (5th Cir. 1984). And courts have held that punitive damages are not available against federal grantees sued under section 504. See Barnes v. Gorman, 536 U.S. 181, 189 (2001); Estate of Lance ex rel. Lance v. Lewisville Indep. Sch. Dist., No. 4:11-cv-32, 2011 WL 4100960, at *9 (E.D. Tex. Aug. 23, 2011).

The foregoing analysis makes clear that, in light of the waiver rationale, there is no force to SFA's argument that the Eleventh Amendment deprives this Court of subject matter jurisdiction over Mr. Dugger's Rehabilitation Act claim.

### 3. Exhaustion of Administrative Remedies

SFA next argues that Mr. Dugger failed to exhaust his administrative remedies and that the complaint should be dismissed for that reason as well. It is not clear from SFA's motion whether SFA is arguing that the exhaustion requirement applies to the Rehabilitation Act claim or only to the state law claim raised by Mr. Dugger. In any event, it is clear both in the Fifth Circuit and elsewhere that a plaintiff bringing a Rehabilitation Act claim against any entity other than a federal agency is not required to exhaust administrative remedies. See Taylor v. City of Shreveport, 798 F.3d 276, 283-84 (5th Cir. 2015) ("Although a plaintiff must exhaust his or her administrative remedies before pursuing a Rehabilitation Act claim against a federal *agency*, it need not do so before suing a federal *grantee*."). See also Prewitt v. U.S. Postal Serv., 662 F.2d 311, 314 (5th Cir. 1981); Camenisch v. Univ. of Tex., 616 F.2d 127, 135 (5th Cir. 1980), vacated on other grounds, 451 U.S. 390 (1981); Freed v. Consolidated Rail Corp., 201 F.3d 188, 194 (3d Cir. 2000); Brennan v. King, 139 F.3d 258, 268 n.12 (1st Cir. 1998); Tuck v. HCA Health Servs. of Tenn., Inc., 7 F.3d 465, 470-71 (6th Cir. 1993); Smith v. Barton, 914 F.2d

1330 (9th Cir. 1990); <u>N.M. Ass'n of Retarded Citizens v. State of N.M.</u>, 678 F.2d 847, 850 (10th Cir. 1982); <u>Kling v. Los Angeles Cty.</u>, 633 F.2d 876, 879 (9th Cir. 1980); <u>Minter v. Dist. of Columbia</u>, 62 F. Supp. 2d 149 (D.D.C. 2014).  The exhaustion of remedies argument therefore has no traction with regard to the Rehabilitation Act claim.  And because SFA's exhaustion argument is meritless, so is SFA's statute of limitations argument, which is based on the exhaustion argument.

For these reasons, the Court DENIES the defendant's motion to dismiss Mr. Dugger's Rehabilitation Act claim.

### B.  The Texas Labor Code Claim

SFA argues that the Eleventh Amendment bars Mr. Dugger from prosecuting his Texas Labor Code claim in federal court.  As noted, it is well established that, absent an express waiver or an abrogation of the state's sovereign immunity by Congress, a State may not be sued in a federal court.  The State of Texas has not provided a clear and unambiguous waiver of its immunity from suit in a federal court with regard to retaliation claims under section 451.001 of the Texas Labor Code,[6] nor has Congress abrogated the State's right under the Eleventh

---

[6]  The Texas Supreme Court has held that the State waived its sovereign immunity for retaliation claims brought in state court under section 451.001 of the Texas Labor Code. <u>Kerrville State Hosp. v. Fernandez</u>, 28 S.W.3d 1 (Tex. 2000).  The court reasoned that a particular statutory provision designating the state agency as the proper defendant for claims under section 45.001 would not "make[] any sense if immunity is not waived." <u>Id.</u> at 6.  The court's reasoning, however, does not provide a basis to conclude that the State waived its immunity in federal court, as the provision "can be interpreted in a manner that does not require a finding of waiver" in federal court—i.e., by interpreting the provision simply to identify the proper defendant for suit in a state court. <u>Id.</u>; <u>see also</u> <u>Sossamon v. Texas</u>, 131 S. Ct. at 1658 ("a State's consent to suit in its own courts is not a waiver of its immunity from suit in a federal court"); <u>Perez v. Region 20 Educ. Serv. Ctr.</u>, 307 F.3d 318, 332 (5th Cir. 2002) (noting that although a "section of the Texas Labor Code," Tex. Lab. Code Ann. §§ 21.002(8)(D), 21.002(14)(A), "does waive sovereign immunity for claims brought under the [Texas Commission on Human Rights Act, Tex. Lab. Code Ann. §§ 21.001-.556,] in state court[,] . . .

Amendment not to be so sued. For that reason, the action by Mr. Dugger, brought in a federal court, must be dismissed. See Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 332 (5th Cir. 2002); Martinez v. Tex. Dep't of Criminal Justice, 300 F.3d 567, 575-76 (5th Cir. 2002) ("Even when a State consents to suit in its own courts . . . it may retain Eleventh Amendment immunity from suit in federal court.") (citing Welch v. Dep't of Highways & Pub. Transp., 483 U.S. 468, 473-74 (1987), and other authorities); Dottin v. Tex. Dep't of Criminal Justice, No. 1:13-cv-710, 2014 WL 11498078, at *5 (E.D. Tex. Nov. 25, 2014).

For these reasons, the Court GRANTS the defendant's motion to dismiss Mr. Dugger's Texas Labor Code claim.

## II. The Motion for Summary Judgment

SFA also moves for summary judgment on both claims. Because the Court has dismissed the Texas Labor Code claim, the Court will address only the portion of the summary judgment motion that is directed to Mr. Dugger's Rehabilitation Act claim.

In order to prove a violation of the Rehabilitation Act in the employment context, a plaintiff must show (1) that he is "an individual with a disability"; (2) that he is "otherwise qualified" for the position in question; (3) that he worked for a "program or activity receiving Federal financial assistance," and (4) that he was discriminated against "solely by reason of her or his disability." Washburn v. Harvey, 504 F.3d 505, 508 (5th Cir. 2007); see also Hale v. King, 642 F.3d 492, 499 (5th Cir. 2011). In order to obtain compensatory damages, the plaintiff is required to prove intentional discrimination. Delano-Pyle v. Victoria Cty., Tex., 302 F.3d 567, 574 (5th Cir. 2002). Discrimination by a public entity includes failing to make "reasonable

the cited section does not expressly waive sovereign immunity in *federal* court.") (internal citations omitted).

accommodations" to the disabled individual so that he can participate in the programs provided by the public entity.  See 28 C.F.R. § 35.130(b)(7).

Where, as here, a claim of disability discrimination in employment is based at least in part on a theory of failure to accommodate the plaintiff's disability, the plaintiff must show by a preponderance of the evidence (1) that he had a disability; (2) that the employer had notice of his disability; (3) that he could perform the essential functions of the position with no more than a reasonable accommodation by the employer; and (4) that the employer denied his request for a reasonable accommodation.  Washburn, 504 F.3d at 509; Feist v. La., Dep't of Justice, Office of the Atty. Gen., 730 F.3d 450, 452 (5th Cir. 2013); Griffin v. United Parcel Serv., Inc., 661 F.3d 216, 222 (5th Cir. 2011); Jenkins v. Cleco Power, LLC, 487 F.3d 309, 315-16 (5th Cir. 2007); Ward v. McDonald, 762 F.3d 24, 31 (D.C. Cir. 2014).[7]  An employer's obligation to accommodate is not triggered until an employee requests an accommodation.  Dillard v. City of Austin, Tex., 837 F.3d 557, 562 (5th Cir. 2016); EEOC v. Chevron Phillips Chem. Co., LP, 570 F.3d 606, 614 (5th Cir. 2009).  The plaintiff bears the burden of showing that he requested a reasonable accommodation.  Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 736 n.4 (5th Cir. 1999); Burch v. Coca-Cola Co., 119 F.3d 305, 320 (5th Cir. 1997); Taylor v. Principal Fin. Grp., Inc., 93 F.3d 155, 164-65 (5th Cir. 1996).

---

[7]  The Fifth Circuit has sometimes articulated those elements differently, but the court has been consistent with respect to the substance of the elements.  Thus, for example, the court has at times referred to the requirement to show that the employee is a "qualified individual with a disability," see Feist, 730 F.3d at 452, while at other times it has stated that the employee must show (1) that he has a disability and (2) that with or without reasonable accommodation he can perform the essential functions of the position in question, see EEOC v. Chevron Phillips Chem. Co., LP, 570 F.3d 606, 614 (5th Cir. 2009).  There is no substantive difference between the two formulations.

SFA's argument directed to the Rehabilitation Act claim is that (1) Mr. Dugger did not have a disability; (2) Mr. Dugger never notified SFA that he had a disability; and (3) Mr. Dugger never requested an accommodation for his disability.

## A. Mr. Dugger's Disability and Notification to SFA

SFA argues, Dkt. No. 34, at 12, that Mr. Dugger never notified SFA that he had a disability and that none of his medical providers ever diagnosed him with a disability. For those reasons, according to SFA, his claim that he has a disability must fail.

### 1. No Diagnosis of Disability

For purposes of the Rehabilitation Act, a disability is defined, in pertinent part, as "a physical or mental impairment that substantially limits one or more major life activities of such individual." See 29 U.S.C. § 705(20)(B) (incorporating, for purposes of section 504 of the Rehabilitation Act, the definition of "disability" that applies to the ADA, 42 U.S.C. § 12102).

Whether a person's physical or mental condition substantially limits one or more major life activities is a question of fact for the jury. See, e.g., Barber v. Nabors Drilling U.S.A., Inc., 130 F.3d 702, 707 (5th Cir. 1997); Dutcher v. Ingalls Shipbldg., 53 F.3d 723, 727 (5th Cir. 1995); Ekstrand v. Sch. Dist. of Somerset, 583 F.3d 972, 975 (7th Cir. 2009); Doebele v. Sprint/United Mgmt. Co., 342 F.3d 1117, 1129 (10th Cir. 2003); Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008); Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 569 (3d Cir. 2002); Webner v. Titan Distribution, Inc., 267 F.3d 828, 834 (8th Cir. 2001); Quint v. A.E. Staley Mfg. Co., 172 F.3d 1, 13 (1st Cir. 1999).

Significantly, SFA does not argue that the evidence is insufficient to support a finding that Mr. Dugger's back condition limits him in one or more major life activities. Instead, SFA argues that "none of Dugger's medical providers ever diagnosed him with a disability," and that

for that reason he has failed to prove that he has a disability. Dkt. No. 34, at 12. That argument is unpersuasive. Physicians make medical diagnoses; in so doing, they are not called upon to make judgments as to whether the patient's impairment "limits one or more major life activities," and thus constitutes a disability. It is therefore not surprising—and not fatal to Mr. Dugger's claim—that none of his physicians diagnosed him with a "disability." The issue before the Court is whether Mr. Dugger's condition affects him in a manner that satisfies the statutory definition of a disability, and on that issue the Court concludes that the evidence proffered on summary judgment is sufficient to create a triable question of fact.

In particular, the evidence shows that Mr. Dugger suffers from back pain that limits the scope of his activities in certain respects, such as lifting heavy loads, bending, and walking for extended periods of time. His physicians diagnosed him with various conditions associated with a herniated lumbar disc. Between September and December of 2014, Mr. Dugger's physicians directed that, in light of his condition, he could return to work, but only with restrictions on his activities.

A case fairly close on its facts to this one is Webner v. Titan Distribution, Inc., 267 F.3d 828 (8th Cir. 2001). In that case, the plaintiff injured his back at work and was limited in the extent to which he could walk, stand for long periods of time, lift weights, twist, and bend at the waist. Applying the definition of "disability" in section 12102, the court ruled that "sitting, standing, lifting, and reaching" are major life activities. The court further held that to be substantially limited in those major life activities, within the meaning of section 12102, a person "must be unable to perform a major life activity that the average person in the general population can perform, or be significantly limited in the condition, manner, or duration under which the

individual can perform that activity as compared to an average person in the general population." 267 F.3d at 834.

The Webner court concluded that Mr. Webner had presented evidence that could have allowed a rational jury to determine that his back injury "substantially limited one or more of his major life activities," id., and that the question whether his condition constituted a disability under the ADA was properly left to the jury. The same is true here: Mr. Dugger has presented enough evidence that his back injury has resulted in a substantial limitation of one or more major life activities to raise a disputed issue of material fact and avoid summary judgment on that issue.

### 2. Notification to SFA of Mr. Dugger's Condition

There is also ample evidence to support Mr. Dugger's assertion that he notified SFA of his condition both initially and throughout the period in which he was seeking a light-duty assignment. In his declaration, Mr. Dugger represents that he provided SFA representatives with updates on his condition every two weeks. Dkt. No. 38-1, at 6, Plaintiff's Exh. 1. The record also contains numerous reports submitted by Mr. Dugger's physicians to SFA reporting on his condition. The question whether Mr. Dugger adequately notified SFA that he had a disability is a fact question for a jury, and the evidence on that issue is sufficient to allow a reasonable jury to find that he did. Accordingly, summary judgment is not appropriate on that issue.

### B. Mr. Dugger's Request for an Accommodation

SFA next contends that Mr. Dugger never requested that SFA provide an accommodation for his disability, and that the Court should grant summary judgment on that ground as well. Again, the evidence is sufficient to create a factual issue as to whether Mr. Dugger requested an accommodation. In his declaration, Mr. Dugger states that he requested a light-duty assignment. Dkt. No. 38-1, at 6, Plaintiff's Exh. 1. And in fact Mr. Dugger was given a light-duty

assignment between September 2 and September 4, 2014, which strongly suggests that he wanted such an accommodation. Moreover, an email chain among SFA officials on September 4 and September 5 indicates that the responsible officials were aware that Mr. Dugger was unhappy when he was informed at the end of the day on September 4 that his light-duty assignment would be ending and that he should not come to work the next day. Dkt. No. 38-1, at 52-55, Plaintiff's Exh. 9. Finally, the physicians' reports from August through early December of 2014 all stated that Mr. Dugger was cleared to return to work with restrictions, but after the expiration of his light-duty assignment on September 4, 2014, SFA took the position that he would not be permitted to return to work until he was cleared for full service.

That evidence is sufficient to create a factual issue as to whether Mr. Dugger requested an accommodation from SFA in the form of a light-duty assignment, at least until December 2014, when Dr. Fults reported that Mr. Dugger would not be cleared to return to work even with restrictions. Summary judgment therefore is not appropriate on that issue.

In its reply brief, Dkt. No. 39, at 1-2, SFA argues for the first time that Mr. Dugger failed to satisfy the requirements of SFA's written policy for requesting an accommodation for a disability. That policy requires that a person seeking such an accommodation must (1) promptly notify his immediate supervisor of his disability and (2) provide to the director of Human Resources within 14 days a letter from an appropriate healthcare or rehabilitation professional containing a diagnosis, a prognosis, and "an evaluation of the effect the impairment will have on the employee's ability to perform the essential duties associated with the employee's position," along with all documentation relevant to making a decision about a reasonable accommodation. Dkt. No. 34-11, at 1-2, Defendant's Exh. K.

That argument is unconvincing, for three reasons. In the first place, the argument that Mr. Dugger failed to comply with all of the requirements of SFA's written policy on requesting an accommodation was not raised in SFA's initial brief, so it is waived. <u>Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.</u>, No. 2:14-cv-911, 2015 WL 5786501, at *5 (E.D. Tex. Sept. 30, 2015) ("The Court does not consider arguments raised for the first time in a reply brief."); <u>TracBeam, LLC v. Apple, Inc.</u>, No. 6:14-cv-680, 2015 WL 5786449, at *2 (E.D. Tex. Sept. 29, 2015) (courts disregard new evidence or argument offered for the first time in the reply brief); <u>Flooring Sys., Inc. v. Chow</u>, No. 4:12-cv-475, 2013 WL 4674667, at *1 n.2 (E.D. Tex. Aug. 29, 2013) ("Arguments raised for the first time in a reply brief . . . are waived."); <u>Miles Bramwell USA, LLC v. Weight Watchers Int'l, Inc.</u>, No. 4:12-cv-292, 2013 WL 1797031, at *4 (E.D. Tex. Mar. 27, 2013) (same); <u>Nearstar, Inc. v. Waggoner</u>, No. 4:09-cv-218, 2011 WL 817374, at *4 (E.D. Tex. Mar. 2, 2011) (party "is seeking summary judgment on a ground not raised in their motion, presented instead for the first time in the reply brief, neither of which is permissible"); <u>United States v. Jackson</u>, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("arguments raised for the first time in a reply brief are waived").

Second, there is evidence in the record that Mr. Dugger at least substantially complied with the requirements of the SFA policy. The evidence shows that Mr. Dugger informed his supervisors of his condition and that his physicians regularly reported to SFA, giving updates on his condition and their diagnoses. SFA's "Offer of Employment" issued to Mr. Dugger on August 29, 2014, acknowledged that the University had received medical information from Mr. Dugger's physician "outlining the restrictions under which [Mr. Dugger would be] able to return to work." Dkt. No. 34-5, Defendant's Exh. E. In addition, until December 2014 Mr. Dugger's

physicians continued to report regularly to SFA, stating that Mr. Dugger could return to work, albeit with certain specified restrictions.

Third, the question of the adequacy of a request for an accommodation of a disability is a federal issue. The requirement imposed on a person seeking an accommodation for a disability under section 504 is for the person to provide a "sufficiently direct and specific request" for an accommodation such that the recipient of the request will understand that an accommodation is being sought. Nathanson v. Med. College of Pa., 926 F.2d 1368, 1381 (3d Cir. 1991); Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 795 (1st Cir. 1992).

In the employment context, the employee must provide the employer with enough information that the employer will know of both the employee's disability and his desire for an accommodation. Ballard v. Rubin, 284 F.3d 957, 960 (8th Cir. 2002); Taylor v. Phoenixville Sch. Dist. 184 F.3d 296, 313 (3d Cir. 1999) ("[T]he employer must know of both the disability and the employee's desire for accommodations for that disability."). The requirement of notice, simply put, is that "an employee has an obligation to state how the employer may accommodate him." Clouatre v. Runyon, 82 F. App'x 972, 973 (5th Cir. 2003). As explained by the district court in Badwal v. Board of Trustees of the University of the District of Columbia, 139 F. Supp. 3d 295, 313 (D.D.C. 2015), "While there is no requirement that an employee's request for an accommodation be in writing or invoke the magic words 'reasonable accommodation,' the request must make clear that the employee 'wants assistance with his or her disability' so that he or she may return, or continue, to work" (citations omitted).

While the employee's failure to comply with a reasonable and well-publicized notice procedure may bear on the adequacy of the employee's notice, the question whether the notice was adequate for section 504 purposes is not necessarily answered by the employee's failure to

follow all of the requirements of the employer's notice policy to the letter. The fact that Mr. Dugger may not have complied with all the components of SFA's policy for requesting an accommodation is not, standing alone, enough to establish conclusively that he failed to provide adequate notice to the university of his desire for an accommodation. Thus, the question whether Mr. Dugger gave SFA notice not only of his disability but also of his request for an accommodation in the form of light-duty work is a disputed issue of fact for the jury.

In sum, the Court GRANTS SFA's motion to dismiss Mr. Dugger's claim under the Texas Labor Code, but DENIES SFA's motion to dismiss Mr. Dugger's claim under the Rehabilitation Act. The Court DENIES SFA's motion for summary judgment on the Rehabilitation Act claim. In light of the Court's ruling on the motion to dismiss Mr. Dugger's claim under the Texas Labor Code, SFA's motion for summary judgment on that claim is denied as MOOT.

IT IS SO ORDERED.

SIGNED this 6th day of February, 2017.


WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE